## Fields v. Commonwealth.

April 18, 1939.

W. E. Begley, Judge.

S. H. RICE for appellant.

HUBERT MEREDITH, Attorney General, and WM. F. NEILL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

The appellant, Vernon Fields, upon trial in the Jackson circuit court on an indictment charging him with the wilful murder of Jim Welch, was convicted of voluntary manslaughter and his punishment fixed at five years' confinement in the penitentiary.

From a judgment entered upon that verdict, he appeals, asking its reversal because of the following errors assigned and alleged committed by the trial court: (1) That the court erred in failing to direct a verdict of not guilty; (2) that the verdict is flagrantly against the evidence; and (3) that the court erred in admitting incompetent evidence.

We will consider grounds 1 and 2 together, in that they both relate to the character and sufficiency of the evidence introduced, whether in chief for the defendant or heard upon the whole case, either to support the verdict of the jury or to justify the submission of the case to the jury.

Appellant contends, it being the duty of the trial court to instruct the jury upon the entire law of the case, that the court's failure to give a peremptory instruction violated that rule.

The appellee answers this contention by pointing out that the transcript of testimony shows that no motion was ever made by defendant for a peremptory instruction or that the court ever ruled on such a motion.

Such being the showing of the record, appellee in-

sists that appellant's objection on this ground, now first urged here, is not well taken, in that he can not now here complain that the evidence introduced upon the trial was not sufficient to take the case to the jury, where he saved no such objection below and, further, saved no exception to the unfavorable ruling of the court except only to its order overruling his motion and grounds for a new trial, one ground of which asked a new trial because of the court's failure to peremptorily instruct the jury to find the defendant not guilty.

Appellant responds that the making of a motion for a directed verdict is not necessary, relying, in support of his position, on the case of Commonwealth v. Stringer, 195 Ky. 717, 243 S. W. 944, 945, where we said:

"If, however, there is not sufficient competent evidence to convince a reasonable mind of defendant's guilt of the charge in the indictment, as in the case at bar, the court should, on motion of counsel or on its own motion, direct the jury to find and return a verdict of not guilty."

Further, on this point, in Cheek v. Commonwealth, 162 Ky. 56, 171 S. W. 998, the rule was declared that:

"While it is true that it is not necessary to except to instructions in a criminal case in order to question their sufficiency, for the reason that it is the duty of the trial court to give correctly all the law of the case, yet it is equally well settled that errors in the instructions will not be considered on appeal unless relied on as a ground for new trial. Buckles v. Commonwealth, 113 Ky. [795] 799, 68 S. W. 1084, 24 Ky. Law Rep. 571; Thompson v. Commonwealth, 122 Ky. 501, 91 S. W. 701, 28 Ky. Law Rep. 1137."

The indictment here preferred sufficiently charged a public offense and the court's alleged error in failing to give a peremptory instruction having been made a ground of the motion of the accused for a new trial, the trial court was yet not authorized, even though the right of defendant thereto was properly raised, to give a peremptory instruction to acquit the defendant, if there was any competent evidence of substantial and probative quality tending to establish the guilt of the accused for the crime charged or unless the evidence was wholly insufficient to show his guilt. Commonwealth v. Boaz 140 Ky. 715, 131 S. W. 782.

Keeping in mind these well-settled rules as applicable to the first two grounds urged by appellant for reversal of the judgment, we will now consider (1) whether or not the appellant was upon the evidence here heard entitled to have given, upon the court's own motion, when instructing upon the whole law of the case, a directed verdict to find in his favor and (2) whether or not the verdict is flagrantly against the evidence.

Our disposition of these grounds calls for a brief review of the facts as developed by the testimony given upon the trial.

The killing of Jim Welch occurred on the Sunday evening of June 4, 1938, in Jackson County, near the Muncie post office. This post office was located in the home of one Earl Rader, an uncle of the appellant. A county road ran east and west some seventy-five feet below the post office and a short distance west of Rader's home, and located also on the south side of the road, was a church, opposite which a pathway led through the woods to the house of the deceased, some one hundred yards north of the road. On the Sunday afternoon on which this fatality occurred, the deceased had driven in his car, in company with Rader, the appellant, Fields, and Charlie Venable, over to Beattyville to see a ball game, after which (while returning home) they stopped at a road house, where deceased did considerable drinking and later had an altercation with appellant, whom he struck when he tried to get him to leave the road house. The appellant and his uncle, Rader, then left the deceased Welch at the road house and returned home in another car. Later that evening the wife of deceased went to Charlie Venable's, where she was to meet her husband and bring him home, which she did, arriving at Muncie at about dark. Parking their car back of Rader's house, they proceeded to go down the road towards their home and had only turned from the road and gone a short distance down the path when the deceased, it is testified by his wife, drew his knife and said he "aimed" to cut her with it, when she turned and ran back towards the road to escape his mistreatment, the deceased following in hot pursuit; that he continued to run after her until he reached a point in the road about opposite the post office, when, seeing the appellant standing over on the hillside in front of the post office, he exclaimed that there was the "s. o. b." he was going to kill and went up the hill towards him.

Other of the commonwealth's witnesses give the same account of these happenings upon this occasion, stating that the deceased, after making the threatening proclamation upon seeing the appellant, that there was the "s. o. b." he was going to kill, proceeded to advance on him. Deceased's wife states also that the deceased at the time had the knife with which he had been threatening to cut her.

The testimony is further that when deceased came within a few feet of appellant, while thus threatening him, appellant, picked up a large stone, which he threw at deceased, striking him in the head and inflicting the injury upon him from which he died the following Tuesday.

Within a few minutes after this killing occurred, it is testified that appellant went by the home of his neighbors, the Harrisons, and told them that he "guessed he had killed Jim Welch" and that he wanted them to go and take care of him; and, also, that he tapped his heart and said, "It didn't touch my heart a g. d. bit. I done my best."

Mrs. Harrison further testifies that when this dramatic play was being staged by the deceased and his wife, she heard his wife call to the appellant, as her husband was advancing on him, "Go back now, Vernon. Now Vernon, go back;" that she heard the wife of the deceased then say, "Oh, Lord, he has killed him." Also she testifies to the appellant's saying that "It (his killing of the deceased) didn't touch me a g. d. bit; I have had to bust his g. d. brains out once today. He jumped on me at Elmer Brandenburg's today."

The defendant, on the other hand, when testifying in his own defense, says that the deceased rushed on him, as stated, and when within a few feet of him, he threw a rock at him, which missed him, when he, the appellant, reached and got a rock, which he threw at the deceased to keep him from cutting him with the knife he saw the deceased have, which struck him in the head and fatally injured him.

Also, McKinley Isaacs, the brother-in-law of the deceased and an eyewitness to the whole transaction, testifies, in corroboration of appellant's testimony, that he saw the deceased advance upon appellant, when having a knife; that when within a short distance of appellant

he (deceased) threw a rock at him and that then appellant threw a rock at deceased which fatally injured him.

Upon conclusion of the evidence, the court gave the jury instructions upon murder and its lesser degree, manslaughter; a self-defense instruction; one instructing it as to finding whether or not the rock thrown by appellant was a deadly weapon, and others.

The jury, under these instructions, found the appellant guilty of manslaughter and fixed his punishment at five years' imprisonment, as stated above.

After a careful review of this evidence, we find it to be not altogether without substance or probative value, and therefore conclude that the court rightly submitted the case to the jury.

However, we are further of. the opinion that the jury's finding or verdict was flagrantly against the evidence and that for such reason the judgment entered thereon must be reversed.

Having reached such conclusion, we deem it unnecessary to discuss the further points raised by appellant, other than, without commenting, to say we deem same to be without merit.

Judgment reversed.